CONRAD J. ERTZ v. PRODUCE EXCHANGE COMPANY OF MINNEAPOLIS and Others.[1]

January 4, 1901.

Nos. 12,304—(173).

**Combination in Restraint of Trade.**

The constitution and by-laws of a corporation regulated the credit to be allowed its members, discriminated in the price to be paid for produce against persons not members, controlled the delivery of goods, and provided a penalty by fine and suspension for offending and defaulting members. *Held*, that such an organization is a combination in restraint of trade, tends to limit and control the market price of produce, limits and interferes with the free and open purchase and sale of commodities, and is prohibited by Laws 1899, c. 359.

[1] Reported in 84 N. W. 743.

Boycott—Estoppel of Former Member.

> The fact that a dealer in produce was a member of such an associa- tion, and participated in the adoption of such constitution and by-laws, does not prevent him from maintaining an action against such associa- tion and its members for damages caused by the boycotting by them of his business after he was suspended for violation of such by-laws. The acts complained of having been performed after he ceased to be a mem- ber, and without his consent, the plaintiff is not pari delicto.

Action in the district court for Hennepin county to recover $25,- 000 damages from defendants for combining and conspiring to ruin plaintiff's business as set forth in the opinion. The case was tried before McGee, J., who directed a verdict in favor of defend- ants. From an order denying a motion for a new trial, plaintiff appealed. Reversed.

*James Robertson* and *M. C. Brady*, for appellant.

The language of Laws 1899, c. 359, is largely taken from 26 St. 209. The construction placed on the federal statute is applicable. If defendants entered into a conspiracy or combination in restraint of trade, or to destroy, limit, or interfere with free competition in the purchase or sale of the commodities mentioned, and plain- tiff was damaged thereby, he is entitled to recover. U. S. v. Trans-Missouri Freight Assn., 166 U. S. 290, 324; U. S. v. Addy- ston P. & S. Co., 54 U. S. App. 723. While the federal act af- firmatively gives a right of action to the injured party and the state act does not, yet where a party commits an act which is criminal and another suffers damages in consequence, a right of action accrues to the injured party. Cooley, Torts, 88–124; 8 Am. & Eng. Enc. (2d Ed.) 598; 1 Bishop, Crim. L. § 264; 2 Addison, Torts, § 850; Doremus v. Hennessy, 176 Ill. 608. The courts pro- ceed upon the theory that any act done in the commission of a crime is malicious. 14 Am. & Eng. Enc. 5; People v. Chicago, 170 Ill. 556. Neither the doctrine of pari delicto nor of particeps criminis applies. Even if plaintiff was a member of the Produce Exchange during the period covered by the complaint, his rights are not cut off. Mohney v. Cook, 26 Pa. St. 342; Cooley, Const. Lim. (1st Ed.) 253; People v. Chicago, supra; Frorer v. People, 141

Ill. 171; 2 Greenleaf, Ev. § 85; Com. v. Collberg, 119 Mass. 350; Adams v. Waggoner, 33 Ind. 531; Stout v. Wren, 1 Hawks, 420; Bell v. Hansley, 3 Jones, Law (N. C.) 131; Exodus, xxi, 18, 19; Dole v. Erskine, 35 N. H. 303; Grotton v. Glidden, 84 Me. 589.

*Stiles & Stiles*, for respondents.

Conceding, for the purpose of argument, that an unlawful conspiracy has been shown, plaintiff cannot maintain this action: Because, first, he had no legal right to buy merchandise of any defendant; second, he himself actively and knowingly aided and assisted in putting in motion the very agency by whose actions he claims to have been injuriously affected; and third, he expressly consented that each defendant should do exactly what it is shown certain of the defendants did do—refuse to sell to him. A different question is here presented from that which was before the court in a former appeal. The court then held the complaint to state a cause of action because it alleged that defendants had maliciously conspired together to induce plaintiff's patrons and third persons not to trade with him, and that the agreement was not made to serve any legitimate business ends of their own. The principle laid down in Bohn Mnfg. Co. v. Hollis, 54 Minn. 223, that a man not under contract obligations to the contrary has a right to refuse to work for, or deal with, any man or class of men, as he sees fit, and that the right which one man may exercise singly many may lawfully agree by voluntary association to do jointly, provided they do not interfere with the legal rights of others, is affirmed. With the element of the so-called conspiracy, which goes to the inducing and influencing of patrons and third parties not to trade with plaintiff, out of this case, it is exactly like the Bohn case in every particular. The evidence fails to show the commission of any illegal act which has resulted in legal injury to plaintiff. In any event plaintiff is estopped to complain, because he was one of the conspirators, and hence pari delicto. Peacock v. Terry, 9 Ga. 137; Ellis v. Cleveland, 54 Vt. 437; Goldnamer v. O'Brien, 98 Ky. 569; Galbraith v. Fleming, 60 Mich. 408; Beechley v. Mulville, 102 Iowa, 602.

LEWIS, J.

The Produce Exchange Company of the city of Minneapolis is a corporation, and its by-laws provide certain restrictions and limitations as to the method of doing business by its members, the more important of which are as follows:

"COLLECTION DEPARTMENT RULES.

"Article 1.—City Customers.

"Section 1. All bills for goods sold on credit the six preceding business days to Friday night of each week to customers doing business within the limits of the cities of Minneapolis, St. Paul, St. Anthony Park, Merriam Park, St. Louis Park, Hopkins, New Brighton, Hamline, Wayzata, Lake Park, Robbinsdale, and all lake hotels shall be considered due and payable on the Monday next succeeding such sale, and, unless paid on or before two p. m. of the succeeding Wednesday, the name of the person or firm owing such account shall be reported to the secretary of the produce exchange as delinquent in payment of the same.

"Sec. 2. Any party being delinquent at three consecutive meetings shall be put on the permanent cash list, and shall be sold for cash only. Such party may, after paying all bills, make application in writing to the secretary to be taken off the list. A majority vote of the members at a regular meeting may remove such delinquent name from the permanent cash list."

"Sec. 7. Any person, firm, or corporation, other than members of this exchange, now engaged or that subsequently engages in the wholesale fruit and produce commission or brokerage business in this city shall be considered on a parity with delinquents."

"Article 15. Purchases from Nonmembers.

"Section 1. All members of the collection department desiring to purchase butter or eggs of any parties, not members of this exchange, offering said goods for sale in this city, shall not pay within one cent per pound on butter and one cent per dozen on eggs of the official quotations of this exchange on the day of purchase. Nonmembers may register their names with the secretary, agreeing to sell their butter and eggs exclusively to members of the exchange; and, when such registration is reported by the secretary, the above rule will not apply.

"Sec. 2. Any member violating section 1, article 15, shall be subject to a fine of not less than five dollars nor more than twenty-five dollars."

"Article 16. Produce Exchange of St. Paul.

"The officers of this exchange are empowered at their discretion

to enforce jointly any agreement entered into with the officers of the Produce Exchange of St. Paul for our mutual protection and benefit."

"Article 12. Penalties.

"Sec. 4. When goods are sold for delivery on the following Monday, any house delivering such goods before that day shall pay to the secretary a penalty of five dollars for each violation."

"Sec. 6. Any member or firm guilty of wilful violation of any rule of the collection department, after investigation by the board of directors shall be fined not less than five dollars nor more than twenty-five dollars, or for repeated wilful violations of the rules shall be fined not less than twenty-five dollars nor more than one hundred dollars, and so reported by the board to a meeting of the collection department of the produce exchange, to be confirmed by a plurality vote of all members present. In default of payment of the fine imposed, said members shall immediately forfeit his or their membership to the exchange. It is further agreed and understood that all members shall immediately discontinue all business relations with said defaulting member until said membership has been fully restored."

Appellant, a commission merchant, was a member of this organization, and on July 5, 1899, was accused of selling produce contrary to the provisions of the by-laws, and he was fined $25 under the penalty clause. Refusing to pay the fine, he was suspended, and ceased to be a member after July 19, 1899. This action is brought to recover damages from the corporation and its members for combining and conspiring to ruin his business by not selling to or buying from plaintiff any merchandise or produce, and in influencing others not to have dealings with him. The complaint was sustained as to a demurrer upon a former appeal. 79 Minn. 140, 81 N. W. 737. The cause coming on for trial in the court below, a verdict was directed for defendant, and the plaintiff appeals.

There are two questions presented for review: First, was the produce exchange organized as an illegal combination? and, second, was plaintiff pari delicto by virtue of having been a member?

1. Laws 1899, c. 359, is an act to prevent organizations and

82 M.—12

trusts, and to prevent the same under certain circumstances from doing business or enforcing contracts. Section 1 reads as follows:

"Any contract, agreement, arrangement, or conspiracy, or any combination in the form of a trust, or otherwise, hereafter entered into which is in restraint of trade or commerce within this state, or in restraint of trade or commerce between any of the people of this state and any of the people of any other state or country, or which limits or tends to limit or control the supply of any article, commodity or utility, or the articles which enter into the manufacture of any article or [of] utility, or which regulates, limits or controls or raises or tends to regulate, limit, control or raise the market price of any article, commodity or utility, or tends to limit or regulate the production of any such article, commodity or utility, or in any manner destroys, limits or interferes with open and free competition in either the production, purchase or sale of any commodity, article or utility is hereby prohibited and declared to be unlawful."

The by-laws of the company above quoted regulate the credit that shall be allowed its members, and provide a penalty for violation by removing the privilege of credit. This regulation also applies to dealers not members. Members are required to purchase produce from persons not members at a less price than that quoted by the organization. A penalty for a violation of this rule is a fine of five dollars to twenty-five dollars. If any member deliver goods before the following Monday when sold for delivery on that day, a fine of five dollars is provided. If the fines are not paid, the offending member forfeits his membership, and "it is further agreed and understood that all members shall immediately discontinue all business relations with said defaulting member until said membership has been fully restored."

Here we find a complete scheme to control the produce trade of Minneapolis, St. Paul, and vicinity in favor of the members of the organization. Persons not members, offering produce for sale, are discriminated against, which is illegal; and, if any one of the members refuses to carry out such illegal purpose, he is to be boycotted by all the other members. This is clearly a combination in restraint of trade, tends to limit or control the market

price of articles of produce, and limits and interferes with open and free competition in the purchase and sale of commodities, and is prohibited by the act referred to. The trial court appears to have taken this view, and counsel for respondent does not contend otherwise.

2. But it is claimed the plaintiff was a member of this illegal combination at the time the by-laws were adopted and set into operation, and for that reason the law will not furnish him a remedy. This is not a case calling for the application of any principle analogous to the equitable rule that he who comes into equity should come in with clean hands. The authorities cited in support of the proposition that plaintiff cannot recover because he is simply suffering an injury caused by a means in which he participated are not at all in point. In the principal case cited —Beechley v. Mulville, 102 Iowa, 602, 70 N. W. 107—the court places the decision directly upon the fact that the revoking of the agencies held by the plaintiff was within the authority of the compact, and so plaintiff could not recover damages for the doing of that which he had agreed should be done. In that case the plaintiff directed to be done that which was done to him, and which would not have been done had he not so directed. Hence he could not complain of the consequences of his own acts. In this case plaintiff does not ask damages for suspending him from the association and depriving him of its privileges. The acts complained of were set on foot after he ceased to be a member, and he in no manner consented to participate or is responsible for them.

It does not follow that, because plaintiff was at one time a member of the illegal combination with intent to injure in this manner defaulting members, after ceasing to be a member he must suffer without redress at the hands of his former co-conspirators. It is immaterial whether the plaintiff voluntarily set in motion the proceedings which caused his suspension desiring in good faith to withdraw from the association, or whether he was expelled for reasons beyond his control; the result is the same. There is nothing in the record to charge plaintiff with

acting in bad faith,—that he induced the boycott upon his business, thus laying the foundation for an action in damages. Under the conditions disclosed the law presumes good faith on his part, and will treat him as a reformer, and entitled to all the benefits of the reformation. The application of the principle invoked by respondent would place a burden upon reformation and a premium upon wrongdoing.

Order reversed, and a new trial granted.