## N. K. BEECHLEY v. JOHN MULVILLE, et al., Appellants.

**Insurance: CONSPIRACY.** Insurance is a commodity within McClain's Code, section 5454, prohibiting the formation of combinations or confederations between individuals or corporations to regulate or fix the price of "oil, lumber, coal, * * * or any other commodity."

**RATE COMPACT.** A compact between local insurance agents in a city to fix the rates upon all risks therein, imposing certain penalties for taking of risks at less rates than those fixed by the association is within the inhibition of McClain's Code, section 5454, forbidding the formation of combinations or confederations to regulate the price of any commodity.

**REMOVAL OF AGENT UNDER.** A local insurance agent who was a party to a compact within the inhibition of McClain's Code, section 5454, against the formation of combinations to regulate the price of commodities, cannot recover damages from the other members of the compact, and the insurance company for the withdrawal of the agency from him because of his violation of the compact agreement, where the withdrawal is in pursuance of a provision of the compact imposing such penalty for a violation of its provisions, and the company had the right to withdraw its agency at pleasure  He lost nothing but agencies which the compact gave him.  As the compact was illegal, he lost nothing but an illegal business, made so by a conspiracy to which he was a party.

**Conspiracy.** A conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give a right of action.

*Appeal from Linn District Court.*—HON. W. P. WOLF
Judge.

WEDNESDAY, FEBRUARY 3, 1897.

ACTION for damages because of a conspiracy to destroy plaintiff's business as an insurance agent. Judgment for plaintiff, and the defendants appealed.— *Reversed.*

*Jamison & Burr* and *A. R. West* for appellants.

*Smith & Smith* and *C. J. Deacon* for appellee.

GRANGER, J.—I. The defendants are, besides John Mulville, Henry Bennett, the Detroit Fire & Marine Insurance Company of Detroit, Mich., and the Phœnix Insurance Company of . Hartford, Conn. Charles T. West was named as a defendant, but not served. The plaintiff was an insurance agent at Cedar Rapids, Iowa, and on the fourteenth day of November, 1883, he became a member of the "compact" or organization styled the Cedar Rapids & Marion Underwriters' Union. The agreement is embraced in a writing, denominated "Compact," the first division of which is as follows:

"Compact.

"The Cedar Rapids and Marion Underwriters' Union.

"We, the undersigned, local agents of Cedar Rapids and Marion, Iowa, agree to enter into the following compact, with Henry Bennett, as manager, who shall be required to give a good and sufficient bond in liquidated damages not to engage in the business of fire insurance as a local agent, directly or indirectly, in Cedar Rapids or Marion, for a period of not less than three years from the date of his vacation of office, the expense of such compact and manager to be paid by the companies on a *pro rata* basis of receipts. The duties of said manager to be as follows: (1) To fix rates upon all risks in Cedar Rapids and Marion and vicinity of each, which he shall promulgate and furnish to. all agents at once. (2) He shall pass upon and approve by his official stamp (which shall bear no erasures or alterations) all the monthly accounts, abstracts, and. daily reports, reports of transfers of location of risks, and indorsements, and mail same to various companies or general agents; also, all policies, renewal receipts, or certificates of insurance on which a return premium is charged to

the company, or allowed by the agent. (3) He shall investigate all irregularities which may come under his notice, and have power to examine the books and papers, and take the written statement of any agent, under oath, and enforce such penalties for violation as are hereinafter prescribed in this agreement; and in case of failure or refusal of any agent to pay any penalty assessed under this clause, within ten days, the manager shall have power, and it shall be his duty, to take possession of the books and papers of the company or companies in such agency, providing the manager shall first obtain from such company or companies a written order therefor, and hold the same subject to their order, it being conditioned only that the infliction of a money penalty on an agent or agents shall cover all offenses prior thereto, except that nothing herein shall prevent the manager from peremptorily ordering canceled any policy or policies theretofore issued in violation of this compact and pledge, and prohibiting such agent or agents from writing upon the risk or risks for one year thereafter; and any risk shall be considered as an offense, irrespective of the number of policies issued thereon. Now, therefore, in consideration of the appointment of such manager, we, the undersigned local agents, do hereby agree to and associate ourselves together, under the name of the Cedar Rapids and Marion Underwriters' Union, with the following organization, pledge, and penalties."

The other divisions of the compact are under the headings "Organization," "Pledge," and "Penalties." After some provisions as to organization is the following, as a part of the pledge: "We also agree strictly and honorably to adhere, both in letter and spirit, to the following pledge, viz.: Section 1. That we will not write a risk until a rate has been fixed by the manager, and will adhere to all the rates fixed by him;

that we will not issue a policy ourselves or cause insurance to be written by any company at less than said fixed rates; and, in the event of binding an unrated risk, we will submit an application for rating thereon to the manager, upon the same or next succeeding business day to that on which such risk was bound." After other pledges is the subject of penalties, under which it is provided that an offending member may be required to cancel a policy under which an offense is committed, and shall be prohibited from writing upon the same risk for one year. Then follows a provision for the imposition of fines for a first and second offense, and for the third offense the removal of all companies from the offending member, and expulsion from the compact.

This compact is signed by some thirty-five agents and two insurance companies, not, however, including either of the defendant companies. The defendant Bennett was unanimously accepted as manager, and assumed the duties of the office December 1, 1883. The plaintiff was one of the signers of the compact. Another compact, consisting of members of the former compact, seems to have been formed July 28, 1884, signed by some nineteen of the agents, including the plaintiff, designed to compete "with non-compact insurance companies," with the same person as manager. The defendant Mulville was special agent for the Detroit Fire & Marine Insurance Company, and West, the defendant named, but not served, was such agent for the other defendant company. Prior to November, 1889, the plaintiff had been the local and soliciting agent of the two defendant companies, and other companies at Cedar Rapids, Iowa, and, by selling insurance at less than the prescribed rate under the compact, a fine had been imposed, and also other penalties as to writing insurance. Plaintiff refused to pay the fine, and insisted upon his right to solicit

insurance where he pleased. It is averred in the petition that, because of this, defendant Bennett and the other defendants confederated together to destroy his business as an insurance agent, and that, because of such confederation, the defendant companies, and the others for whom he was acting, canceled their contracts with him, because of which his business was lost, which he claims was worth one thousand dollars per year. The defendants, all except West, answered by a general denial, and the Phœnix Insurance Company pleaded its contract of employment with plaintiff, as in writing, and its right to discharge him at any time it pleased. It also pleaded an estoppel because of plaintiff's membership is the compact.

The jury returned special findings to the effect (1) that plaintiff was a party to the compact at the time he received his appointment from the defendant companies; (2) that, at the time he received the appointment, he did not agree to conform to the rules and regulations of the compact; (3) that he did violate the rules of the compact before the agencies were taken from him; (4) that the agencies were not taken because he refused to comply with the rules of the company as provided in his agreement, but that other reasons existed therefor; (5) that a combination or conspiracy was entered into between the defendant companies and others for the purpose of injuring plaintiff; (6) that plaintiff had no contract with the defendant companies to be their agent, except during their pleasure; (7) that plaintiff was injured, in the taking away of the agencies of the defendant companies, otherwise than in the privilege of soliciting insurance for them in the future as in the past, and the loss of the probable earnings in the way of commissions he might have earned had he been permitted to continue as agent; and (8) that the combination to

injure his business was formed after plaintiff's refusal to comply with the regulations of the compact.

As to the second finding, that plaintiff, at the time he received his appointment from the defendant companies, did not agree to conform to the rules and regulations of the compact, nothing more can be intended that it is not so specified in the agreements, which are in writing.　If more was intended, it would be without support in the evidence.　The fact clearly appears that these agencies were taken while plaintiff was a member of the compact, and observing its regulations, and that these agencies were a part of his business as a member of the compact.

As to the fourth finding, that the agencies were not taken from plaintiff because he refused to comply with the rules of the companies, as provided in his agreement, but for other reasons, the record will only justify the conclusion that the reason for which they were taken is the violation of the rules of the compact.　It may be important hereafter to notice other facts.

II.　The following is section 5454 of McClain's Code, being section 1, chapter 84, Acts Twenty-second General Assembly: "If any corporation organized under the laws of this state or any other state or country for transacting or conducting any kind of business in this state, or any partnership or individual shall create, enter into, become a member of or party to any pool, trust, agreement, combination or confederation with any other corporation, partnership or individual to regulate or fix the price of oil, lumber, coal, grain, flour, provisions, or any other commodity or article whatever; or shall create, enter into, become a member of or a party to any pool, agreement, combination or confederation to fix or limit the amount or quantity of any commodity or article to be manufactured, mined, produced or sold

in this state, they shall be deemed guilty of a conspiracy to defraud, and be subject to indictment and punishment as provided in the next section." It is thought by appellants that such statute has no application to insurance companies, but the only reason assigned for it is that the same subject has been before each successive legislature since the act passed, and no one has thought that the act referred to such companies. However that may be, we have no doubt of its application to insurance companies because of the language of the act. There is a manifest purpose to make the section comprehensive as to the subject-matter, as well as to persons, both natural and artificial, coming within its prohibitions. It prohibits combinations to fix the price of oil, lumber, coal, grain, flour, provisions, or any other commodity, or article whatever. Insurance is a commodity. "Commodity" is defined to be that which affords advantage or profit. Mr. Anderson, in his Law Dictionary, defines the word as "convenience, privilege, profit, gain; popularly, goods, wares, merchandise." We see no reason why, in the act, the word should be restricted to its popular use. It is common to speak of "selling insurance." It is a term used in insurance business, and law writers have, to quite an extent, adopted it. Again, there are the same reasons why it should be protected against combinations as there are in matters clearly within the provisions of the law. The district court instructed the jury that the combination was prohibited by the act in question, and we think the holding was right.

III. At the close of the evidence, defendants moved the court to direct a verdict for them under the undisputed facts, and we think it should have been done, notwithstanding our holding that the act above referred to applied to insurance companies. In view of our conclusions as to the applicability of the law to insurance companies, and with the statement

that we regard the compact in question as clearly within its provisions, we may pass much that is said in argument by appellee, as to the combination and its character. Reliance is placed on the finding of a conspiracy to injure plaintiff, and there is a finding by the jury that a conspiracy was so formed after the refusal of plaintiff to comply with the regulations of the compact. No such a conspiracy as that is pleaded. It is pleaded that a conspiracy was formed in the organization of the compact, and it is then pleaded that, after the violations of the terms of the compact by plaintiff, these defendants joined together, and assumed to cancel the contracts then existing between plaintiff and the companies of which he was agent, and this is likely what is meant by such conspiracy. With the understanding of what is meant, we need not make nice distinction about the words used. We do not understand it to be contended,— and, if it is, the contention is unwarranted,—that, after the refusal by plaintiff to comply, there was any combination formed other than that the fines were imposed, and the agencies revoked, because of the refusal to observe the terms of the compact. These were results contemplated by the compact, and the means to that end were such as must have been contemplated when the compact was organized. All that can be said is that the defendants, understandingly, acted together to enforce the rules and penalties of the compact. Any claim that they so acted with a purpose to injure plaintiff, except as injury would necessarily result from the enforcement of the regulations of the compact, is entirely without support in the record. The court said to the jury:

"(10) If it appears from the evidence that plaintiff's commissions of appointment from the companies represented by plaintiff provided that they might withdraw their agencies from him at any time without

giving any cause therefor, then the plaintiff could not recover damages on account of such withdrawal, unless you further find that such withdrawals were made through and in pursuance of a design to injure the plaintiff, and as a part of a conspiracy among defendants, or among them and others, to wrong plaintiff, or to inflict punishment upon him for refusal to comply with the said unlawful compact or union." We quote the instruction, because it indicates the mind of the court as to the real basis of recovery, under the evidence. One of the special findings is that the companies had the right to withdraw their agencies at pleasure, and, with that right fixed, the right of recovery is made to depend on the *purpose* with which the right was exercised; that is, was it done *intending* to injure the plaintiff? Concede, for the purpose of the case, the rule that such a recovery could be had, and the record will then defeat a recovery. It is not difficult to illustrate the situation. Had the companies, without reference to the compact, revoked the agencies, as they could rightfully do, the injury to plaintiff's business would have been the same, but without redress. Now change the purpose, so that the revocations are in pursuance of the terms of the compact, and we have precisely this case. The revocations have now been caused by an unlawful combination. Of this combination plaintiff was a member. The penalties imposed, among which is that of "removal of all companies from the offending member," are specified in the compact, and his name is signed thereto. He is himself one of the conspirators who devised and put in operation that which caused his injury. Bennett was but the agent. He did what the plaintiff and others directed. It can be said, undoubtedly, that plaintiff has caused the injury of which he complains by his unlawful acts. Take from

the case, such acts, and the result, of which he complains, could not have happened.

It will be conceded, we think, that, independent of what is termed a "conspiracy," the acts complained of in this case would not afford a right of action, for what is claimed is that the conspiracy or combination caused the acts. Mr. Cooley, in his work on Torts (2d Ed.), p. 143, says: "The general rule is that a conspiracy cannot be made the subject of a civil action unless something is done which without the conspiracy would give the right of action." The rule is approved in *Jayne v. Drorbaugh*, 63 Iowa, 711. See, also, *Kimball v. Harman*, 34 Md. 407; *Robertson v. Parks*, 76 Md. 118 (24 Atl. Rep. 411); *Laverty v. Vanarsdale*, 65 Pa. St. 507. This case seems to be clearly within the rule. A verdict should have been directed for the defendants.—REVERSED.

SUPPLEMENTAL OPINION ON RE-HEARING.

SATURDAY, MAY 29, 1897.

GRANGER, J.—In a petition for a re-hearing there is a very persistent contention that because of a conspiracy, the plaintiff has been deprived of a valuable business; and it is urged, that notwithstanding his connection with the organization of the compact, and his continued membership therein, he could not, by unlawful means, be deprived of property rights, and reliance is placed on the holding in *Printing Co. v. Howell*, 26 Or. 527 (38 Pac. Rep. 547). We readily indorse the holding in that case. It is a case in which a typographical union, an unincorporated voluntary association, with rules for the regulation of its membership (an object of the union being to establish an equitable scale of wages, and to protect its members from sudden or unreasonable fluctuations in the rate

of compensation for their labor, etc.), attempted, in an unlawful manner, to 'compel members of the union and others to quit the employment of the plaintiff, a company engaged in lithographing, engraving, printing, and publishing journals, newspapers, etc. It appears that members of the union went upon the premises of the plaintiff and intimidated members of the union there employed, by threats to enforce the rules of the union against them, so that, against their will, they quit such employment, to the injury of the plaintiff. The record in that case shows other acts of an unlawful character to the injury of the plaintiff. It appears in that case that a conspiracy was formed by the executive committee of the union and its members to destroy the plaintiff's business, or compel it to submit to the rules of the union, of which it was not a member. The opinion, after defining or specifying some things lawful for such organization, states: "No resort can be had to compulsory methods of any kind to increase, keep up, or retain such memberships. Nor is it permissible for associations of this kind to enforce the observance of their laws, rules, and regulations through violence, threats, or intimidation, or deprive persons of perfect freedom of action." The opinion holds, that such organizations may preserve their membership by reasoning, fair arguments, and even by persuasion and entreaty. It is to be remembered that the organization was a legal one, its methods to enforce its objects only being held illegal. The illegalities consisted in attempts to injure the plaintiff's business, which was legal, and interfering in an unlawful manner with the freedom of its employes. The case at bar has none of the features of that case. In this case the plaintiff was a member of an unlawful combination or compact. For six years or more he had been such, and the agencies, the loss of which constitutes the injury complained

of, came to him as a member of the compact, under an agreement to do the business of the agencies under the rules of the compact, and hence he had no lawful business. The transaction, in its entirety, was unlawful. There is not a semblance of a showing of a right to the agencies, except the will of the companies, and then only by virtue of the compact. We do not hold, that had there been a dollar of the lawful property or rights of the plaintiff taken because of his failure to observe the rules of the compact, he might not recover it. That question is not involved. It is purely an action for damages because of the loss of his business as an insurance agent, and it appears that, in a legal sense, he had none. What he did have, as we said in the opinion, he lost by his own illegal acts. He helped to put in operation the causes that deprived him of it. The petition for a re-hearing is OVERRULED.