**COLUMBIA BROADCASTING SYSTEM, INC., Plaintiff-Appellee,**

v.

**AMANA REFRIGERATION, INC., Defendant-Appellant.**

No. 13282.

United States Court of Appeals
Seventh Circuit.

Oct. 30, 1961.

**376**

John P. Ryan, Jr., L. M. McBride, and McBride, Baker, Wienke & Schlosser, Chicago, Ill., for appellant.

Hammond E. Chaffetz, Thomas M. Thomas, William R. Jentes, George D. Newton, Jr., Chicago, Ill., Kirkland, Ellis, Hodson, Chaffetz & Masters, Chicago, Ill., Ralph L. McAfee, Charles G. Moerdler, Cravath, Swaine & Moore, New York City, of counsel, for appellee.

Before SCHNACKENBERG, KNOCH and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This appeal is from the District Court's order dismissing a three-count. counterclaim of Amana Refrigeration,. Inc., defendant-appellant, for failure to state a claim upon which relief can be granted. The counterclaim was filed in a diversity action brought by Columbia. Broadcasting System, Inc., plaintiff-appellee, for monies alleged to be due under agreements for the production and broadcasting of a television program by CBS under Amana's sponsorship over certain broadcasting stations affiliated with the CBS television network. An amount claimed as a set-off by Amana's answer was later waived. The District Court entered judgment for CBS on its contract claim and dismissed Amana's amended counterclaim on CBS' motion that none of the three counts state a claim upon which relief can be granted. The issue on Amana's appeal is thus limited to the legal sufficiency of its counterclaim.

Each count or alleged cause of action of the counterclaim avers in substance that Amana entered into a "facilities" agreement and a "program" agreement, constituting one integral contract, with CBS "covering the sale of network television time" by CBS to Amana and "covering the production and sale of the program purchased" by Amana from CBS, and pursuant to which contract Amana sponsored a series of television programs broadcast from New York on alternate Tuesdays from 8:30 to 9:00 P.M.[1]

Count 1 charges that CBS violated Section 2(a) of the Clayton Act (15 U.S. C.A. § 13(a))[2] and damaged Amana by

---

1. By amendment of the "facilities" agreement the later portion of the series was broadcast from 8:00 to 8:30 P.M.

2. The pertinent provisions of 15 U.S.C.A. § 13(a) are:
   "(a) It shall be unlawful for any person engaged in commerce, in the course of such commerce, either directly or indirectly, to discriminate in price between different purchasers of commodities of like grade and quality, where either or

any of the purchases involved in such discrimination are in commerce; where such commodities are sold for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, and where the effect of such discrimination may be substantially to lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy, or pre-

granting greater discounts, on the basis of quantity, to other sponsors of "Class A time" evening hour programs, including competitors of Amana. Count II charges violation of Section 3 of the Clayton Act (15 U.S.C.A. § 14) [3] and consequent damage to Amana by the requirement of CBS, as a condition of network broadcasts, that Amana "purchase network time" over a specified group of television stations which included all of the stations owned and operated by CBS and certain affiliated stations. Count III charges an additional Section 3 violation to Amana's damage by the refusal of CBS to "sell network time" of Amana's choice to Amana unless the latter agreed to sponsor a program in which CBS had a financial interest. Treble damages are sought pursuant to Section 4 of the Clayton Act (15 U.S.C.A. § 15).

The main contested issues presented by Amana's appeal are:

(1) Whether the allegations of Count I of the counterclaim set forth price discrimination in transactions involving purchasers of commodities of like grade and quality.

(2) Whether the allegations of Counts II and III set forth prohibited tie-in practices in connection with a lease, sale, or contract for the sale of goods, wares, merchandise, machinery, supplies, or other commodities.

Amana contends that the legal sufficiency of all three counts of its counterclaims hinges upon the scope of the term "commodity" as used in Sections 2(a)

and 3 of the Clayton Act. It argues that the term includes the subject matter of the integrated agreements although intangible and that in common parlance television "time" is "purchased" and "sold". It relies on the remedial purpose of the statute as evincing Congressional intent that "commodity" be accorded its broadest meaning and asserts that nothing in the legislative history of the enactment requires restricting its scope.

CBS contends that no purchase, sale or lease of a commodity is here involved, that the essence of the contract is the rendition of services, an intangible, which legislative history and court decisions demonstrate is beyond the reach of Sections 2(a) and 3. Further, CBS relies on administrative interpretation, practical construction by the advertising industry and statements of text writers.

Neither the facilities agreement nor the program agreement is set forth in CBS' complaint or in Amana's counterclaim nor incorporated as an exhibit. Amana has elected to plead the legal effect of the integrated agreements. Cf. Graffius v. Weather-Seal, Inc., D.C.Ohio 1946, 7 F.R.D. 125. While the CBS Network Rate Card #11, attached to the initial answer as Exhibit I, and incorporated by reference in the counterclaim, discloses that the time duration of the broadcast is used to measure its cost to the sponsor we are of the opinion that the reasonable inferences to be drawn from the allegations concerning the written agreements do not admit of the transac-

vent competition with any person who either grants or knowingly receives the benefit of such discrimination, or with customers of either of them: * * *."

3. 15 U.S.C.A. § 14 provides:
"It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place un-

der the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

tion being accurately characterized as a "sale" of television "time" as it is labeled by Amana nor as merely a "services" contract as argued by CBS. Although both services and time are involved we conclude that in its essence the contract alleged is a purchase by Amana of the privilege of having itself identified as sponsor of the program broadcast and making use of the permissible portion thereof for advertising its products.

We are mindful of the fact that dictionary definitions of the word "commodity" have included its use in the sense of "privilege". See Beechley v. Mulville, 102 Iowa 602, 608, 70 N.W. 107, 71 N.W. 428, citing Anderson's Law Dictionary. But here we must evaluate the word in the context in which it appears—the purchase, lease or sale of goods, wares, merchandise, machinery or supplies.

We have carefully considered the legislative history cited by the parties but find nothing therein which we regard as conclusive on the issue before us. Nor have we been cited any case which is determinative. Our own research has produced none. Amana's reliance on state court decisions holding insurance,[4] electricity,[5] and telephone service[6] to be commodities is misplaced. There is little similarity between those subject matters and the "privilege" here secured as a matter of contract right and obligation except the intangible quality they all share.

■ Moreover, we are of the opinion that the most reliable guide to the meaning of the word "commodity" is the context in which it is employed and in our considered judgment the context here— goods, wares, merchandise, machinery and supplies—does not permit an application of the term which embraces the contractual right or privilege of spon-

sorship identification with the broadcast of a television program and the use of a portion of the broadcast time for product advertising. And, the remedial purpose of legislation is not to be derived by rejection of the context of its expression.

It would serve no useful purpose to discuss all of the cases or the text materials cited by the parties. Our conclusion as to the essential nature of the contract makes some of them irrelevant. The others afford no real guide to resolution of the issue. We have, however, considered all of Amana's contentions.

We do not find it necessary to reach the question tendered by CBS' argument that Count I is insufficient for the reason that television broadcasts are not of "like grade and quality" except to indicate that we regard it to involve a factual issue not presented by the pleadings. Although no two programs present the same artistic, educational or entertainment value to all persons it may well be that so-called prime time programs which have demonstrated comparable audience drawing power would be of like grade and quality from a commercial standpoint to prospective sponsor-advertisers.

■ Count III predicates liability on a prohibited tie-in of the production of the program material for the broadcasts. It thus falls within the purview of United States v. Jerrold Electronics Corporation, D.C.E.D.Pa.1960, 187 F.Supp. 545, affirmed 365 U.S. 567, 81 S.Ct. 755, 5 L.Ed.2d 806 and is insufficient for the additional reason that 15 U.S.C.A. § 14 does not apply to tie-ins involving services.

It is our conclusion that the District Court did not err in dismissing Amana's counterclaim.

Affirmed.

4. Speegle v. Board of Fire Underwriters, 29 Cal.2d 34, 172 P.2d 867; Beechley v. Mulville, 102 Iowa 602, 70 N.W. 107, 71 N.W. 428.

5. State ex rel. Spillman v. Interstate Power Co., 118 Neb. 756, 226 N.W. 427.

6. McKinley Tel. Co. v. Cumberland Tel. Co., 152 Wis. 539, 140 N.W. 38.