610 F.2d 665
 1980-1 Trade Cases 63,104
 BLAIR FOODS, INC., a corporation, Plaintiff-Counterdefendant-Appellant,
v.
RANCHERS COTTON OIL, a corporation; William A. Burns, an
Individual; and Glen-Webb & Company of San
Francisco, Inc., a corporation,
Defendants- Counterclaimants-Appellees.
 No. 77-3439.
 United States Court of Appeals,
Ninth Circuit.
 Jan. 2, 1980.
 
 1
 Daniel S. Mason, Furth, Fahrner & Wong, San Francisco, Cal., for plaintiff-counterdefendant-appellant.
 
 
 2
 Benjamin H. Parkinson, Harvey Leiderman, San Francisco, Cal. (argued), for defendants-counterclaimants-appellees; Philip E. Diamond, Landels, Ripley & Diamond, San Francisco, Cal., Ackerman, Johnston, Norberg, & Parkinson, San Francisco, Cal., on brief.
 
 
 3
 Appeal from the United States District Court for the Northern District of California.
 
 
 4
 Before GOODWIN and WALLACE, Circuit Judges, and BARTELS,* District Judge.
 
 BARTELS, District Judge:
 
 5
 Appellant Blair Foods, Inc., ("Blair") brought this private antitrust action under Section Four of the Clayton Act, 15 U.S.C. § 15, seeking treble damages. Blair charged appellees Glen-Webb & Company of San Francisco, Inc., ("Glen-Webb"), Ranchers Cotton Oil ("Ranchers"), and William A. Burns, Vice President of Ranchers, with conspiracy in violation of Section One of the Sherman Act, 15 U.S.C. § 1, and appellee Glen-Webb with an attempt to monopolize in violation of Section Two of that Act, 15 U.S.C. § 2. The United States District Court for the Northern District of California, Schwarzer, J., granted appellees' motion for partial summary judgment under Rule 56 of the Federal Rules of Civil Procedure, holding that there was insufficient evidence to support either claim as a matter of law. This appeal followed.
 
 
 6
 Blair contends that the district court erred in (1) ignoring the applicable summary judgment standard for antitrust cases; (2) misapplying the "attempt to monopolize" test enunciated by this court in Lessig v. Tidewater Oil Co., 327 F.2d 459 (9th Cir. 1964); and (3) improperly granting summary judgment with respect to both the Section One and Two claims under the Sherman Act. We affirm.
 
 
 7
 * The record of pleadings, affidavits, and depositions may be summarized as follows: From its organization in 1972 until its recent demise, Blair was engaged in the processing, repackaging, and distribution of vegetable oils and related food products. Formed by Ronald D. Scheetz and other former employees of Glen-Webb, Blair specialized in sales of mayonnaise, salad dressings, and salad oils to restaurants and other institutional consumers within the State of California and elsewhere. Glen-Webb was and still remains in the business of distributing vegetable oils and related food products, operating out of three district offices in California. As such, it was at all times relevant to this action one of Blair's direct competitors.
 
 
 8
 An essential ingredient in the manufacture, production, and processing of the commodities here involved is cotton seed oil, a viscid oil drawn from the cotton plant and purchased by both companies from time to time from Ranchers. Engaged in the manufacture and marketing of cotton seed oil and other by-products of cotton oil, Ranchers is a non-profit cooperative marketing association which controls approximately 80% Of the cotton seed oil market in California. Appellee Burns is a personal friend of William Clary, chief executive officer of Glen-Webb.
 
 
 9
 Soon after it began operations, Blair attempted with some success to establish itself in the marketplace by instituting unique customer services, such as seven-day, 24-hour operation. Within several months, Blair counted as its customers several establishments which had previously relied upon Glen-Webb for their supply of vegetable oil products. This initial success was competitively harmful to Glen-Webb and, according to Blair, caused it to undertake a deliberate course of action designed to eliminate Blair from the market by engaging in a series of predatory acts, such as offering to undercut Blair's prices, making threats and statements regarding Blair's inevitable demise, willfully failing to return 150 oil drums or containers after formation of a company for the sole purpose of purchasing oil from Blair, and filing a legal action against Blair in state court, which action was subsequently withdrawn by Glen-Webb pursuant to a settlement agreement with Blair.
 
 
 10
 Blair also relies upon various statements allegedly made by Clary and other Glen-Webb personnel indicating their specific intention to drive Blair out of business.[1] In addition, Blair cites hearsay declarations of hostility, veiled threats, and warnings drawn from the deposition testimony of several individuals in an effort to bolster its case on appeal. As Blair admits, however, such hearsay evidence is inadmissible and may not be considered by this court on review of a summary judgment. Janich Bros., Inc. v. American Distilling Co., 570 F.2d 848, 859 (9th Cir. 1977), Cert. denied,439 U.S. 829, 99 S.Ct. 103, 58 L.Ed.2d 122 (1978).[2]
 
 
 11
 In support of its claim that Glen-Webb and Ranchers illegally conspired to eliminate it from competition, Blair cites Clary's friendship with Burns, although no communication or meeting concerning Blair was alleged, and relies heavily upon Ranchers' sudden determination in 1974, after almost two years of extending credit to Blair, that Ranchers would thereafter require prepayment on all purchases by Blair of cotton seed oil, notwithstanding Blair's offer of a third-party guarantee of its obligations. This cancellation of credit, Blair asserts, constituted invidious discrimination against Blair pursuant to an agreement with Glen-Webb, which, despite an inferior record of payment, was permitted to continue purchasing on credit. When Blair asked Ranchers to ship cotton seed oil booked by Blair to the account of a third party, Burns refused, stating, "If you (Blair) send them a pound (of oil), I will tear up the contracts (between Blair and Ranchers) or I will sell them to Glencoe (Glen-Webb) . . . "Both Glen-Webb and Ranchers, however, deny the existence of any agreement, and Ranchers asserts that all credit decisions were based solely upon legitimate business considerations, which, as to Blair, included its failure to return phone calls from Ranchers' employees, its refusal to meet with Burns when he visited Blair's office to discuss amounts owed to Ranchers, and its repeated attempts to pay its bills with bad checks.
 
 
 12
 The district court's dismissal of Blair's conspiracy claim was predicated upon its finding that "(p)laintiff has come forward with no evidence from which a trier of fact could find a conspiracy," that the unilateral cancellation of credit by Ranchers is not actionable under the antitrust laws, and that no reasonable inference of conspiracy could be drawn from the evidence of social contact between Clary and Burns. As to the claim of attempt to monopolize against Glen-Webb, the court found:
 
 
 13
 (I)t is undisputed that Glen-Webb and Blair competed with some one hundred food service wholesalers all of whom were in the business of supplying restaurants and institutions. Many of these companies are as large as or larger than Glen-Webb. Thus, both plaintiff and defendant were engaged in a highly competitive market comprised of many firms in which Glen-Webb had no power to control prices or exclude competitors. Although the evidence may indicate an attitude of hostility by Glen-Webb against its former employees who had gone into competition with it by organizing Blair, it does not permit a finding of attempt to monopolize. See Mutual Fund Investors v. Putnam Management Co., (553 F.2d 620 (9th Cir. 1977)).
 
 
 14
 In reviewing the propriety of a summary judgment, we are limited to a consideration of whether there is in dispute a genuine issue of material fact, bearing in mind at the same time that summary judgment is not particularly favored in antitrust litigation. Fed.R.Civ.P. 56(c); Poller v. Columbia Broadcasting System, 368 U.S. 464, 467, 473, 82 S.Ct. 486, 488, 491, 7 L.Ed.2d 458 (1962); ALW, Inc. v. United Air Lines, Inc., 510 F.2d 52, 55 (9th Cir. 1975).[3] The burden is upon the party seeking the judgment to demonstrate the absence of any material fact and that the moving party is entitled to judgment as a matter of law. Id. In our examination of the record, we are required to draw all inferences in the light most favorable to the party opposing the motion. Id. at 53; California Pacific Bank v. Small Business Administration, 557 F.2d 218, 220 (9th Cir. 1977).
 
 II
 
 15
 One of the principal arguments by Blair on appeal is predicated upon the lower court's reliance upon Glen-Webb's lack of market power with respect to the Section Two attempted monopolization claim, to which we now turn.
 
 
 16
 Section Two of the Sherman Act provides, in part, as follows:
 
 
 17
 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, . . .
 
 
 18
 Blair contends that the district court erred in emphasizing Glen-Webb's relative size in and power to control a highly competitive market, which factor was rejected by this court in Lessig v. Tidewater Oil Co., supra, as "not in issue" in this type of case. 327 F.2d at 474.
 
 
 19
 To make out a prima facie case of attempt to monopolize under Section Two, two elements of proof are indispensable: (1) specific intent to control prices or destroy competition in any part of commerce, and (2) predatory conduct directed to the accomplishment of that unlawful purpose. Greyhound Computer Corporation v. International Business Machines Corporation,559 F.2d 488, 504 (9th Cir. 1977), Cert. denied, 434 U.S. 1040, 98 S.Ct. 782, 54 L.Ed.2d 790 (1978); Knutson v. Daily Review, Inc., 548 F.2d 795, 813-14 (9th Cir. 1976), Cert. denied, 433 U.S. 910, 97 S.Ct. 2977, 53 L.Ed.2d 1094 (1977); Twin City Sportservice, Inc. v. Charles O. Finley & Co.,512 F.2d 1264, 1276 (9th Cir. 1975); Lessig v. Tidewater Oil Co., 327 F.2d at 474-75. This court has also ruled that "dangerous probability of success" in monopolization is a third element of proof in establishing the offense. Janich Bros., Inc. v. Amer. Distilling Co., 570 F.2d at 853; Bushie v. Stenocord Corp., 460 F.2d 116, 121 (9th Cir. 1972); Moore v. Jas. H. Matthews & Co.,473 F.2d 328, 332 (9th Cir. 1973). While not indispensable, evidence of market power is relevant in this context and may suggest the existence of specific intent to monopolize. Lessig v. Tidewater Oil Co., 327 F.2d at 474-75; Janich Bros., Inc. v. Amer. Distilling Co., 570 F.2d at 853; Hallmark Industry v. Reynolds Metals Co., 489 F.2d 8, 12 (9th Cir. 1973), Cert. denied, 417 U.S. 932, 94 S.Ct. 2643, 41 L.Ed.2d 235 (1974). This relationship was explained by Judge Wallace in Janich :
 
 
 20
 (I)t should be remembered that the intent which may be inferred from conduct will depend upon the circumstances in which the conduct occurs. For example, the same aggressive conduct which is seen only as a reaction to competition by a small firm may suggest intent to monopolize where carried out by a firm with a significant market power. Where a plaintiff relies only upon a defendant's conduct to establish an attempted monopolization claim and does not show market power, specific intent to monopolize should ordinarily be inferred only where the alleged conduct is of a kind clearly threatening to competition or clearly exclusionary . . . This is the type of circumstantial evidence which may be used to prove the requisite intent.
 
 
 21
 570 F.2d at 854 n.4.
 
 
 22
 The above analysis is not inconsistent with Lessig. In that case, plaintiff-service station proprietor claimed that defendant-oil company's cancellation of plaintiff's lease violated Section Two of the Sherman Act. The defendant argued, however, that an attempted monopolization is established only when, based upon an evaluation of the market power of the charged party, there is a probability of success. In rejecting this defense, Judge Browning stated:
 
 
 23
 We reject the premise that probability of actual monopolization is an essential element of proof of attempt to monopolize. Of course, such a probability may be relevant circumstantial evidence of intent, but the specific intent itself is the only evidence of dangerous probability the statute requires perhaps on the not unreasonable assumption that the actor is better able than others to judge the practical possibility of achieving his illegal objective.
 
 
 24
 327 F.2d at 474. The real issue in this type of case is one of specific intent to monopolize, and we find nothing in Lessig which excludes consideration of market power as one of the circumstances to be considered in determining whether such intent exists. Thus, discussion of market power by the trial court is proper in conjunction with a Section Two claim.
 
 
 25
 Fairly read, the decision of the lower court indicates that the finding of Glen-Webb's inability to control the vegetable oils market was not the sole basis for the dismissal of Blair's Section Two claim.[4] On the contrary, it explicitly recognized that the evidence "may indicate an element of hostility," thus suggesting that the court reviewed the evidence of alleged predatory conduct as well as that of market power in determining the presence or absence of specific intent to monopolize. The lower court's analysis, it seems to us, is consistent with the decisions of this court discussed above.
 
 
 26
 Nor do we believe that the district court erred in concluding that the statements of Glen-Webb employees and the alleged predatory acts, cited Supra at 3, failed to sustain a finding of attempt to monopolize by Glen-Webb. The mere intention of Glen-Webb to exclude competition, as perhaps evidenced by the admission at deposition by William Clary, is insufficient to establish specific intent to monopolize by some illegal means. General Communications Eng. v. Motorola Commun. and Electronics, 421 F.Supp. 274, 286 (N.D.Ga.1976). To conclude otherwise would contravene the very essence of a competitive marketplace which is to prevail against all competitors.
 
 
 27
 Glen-Webb's conduct, while far from congenial, was neither unlawfully anticompetitive nor "directed to the accomplishment of (an) unlawful purpose . . ." Greyhound Computer Corporation v. International Business Machines Corporation, 559 F.2d at 504. Blair offered no evidence that the filing of a single state court complaint, in response to a similar suit by Blair, was baseless or that the subsequent withdrawal of that action pursuant to a settlement agreement was an implicit admission by Glen-Webb of an abuse of judicial process. Although "repetitive, sham litigation in state courts may constitute an antitrust violation . . .," Vendo Co. v. Lektro-Vend Corp., 433 U.S. 623, 635 n.6, 97 S.Ct. 2881, 2889 n.6, 53 L.Ed.2d 1009 (1977) (plurality decision), unquestionably no such abuse is presented here.
 
 
 28
 Other instances of allegedly predatory conduct do not rise to the level of a violation. Neither the so-called "disparagement campaign" consisting of several statements by Clary and others concerning Blair's business longevity nor the allegations of price cutting by Glen-Webb which Blair failed to prove unlawful under the circumstances here, See Janich Bros., Inc. v. Amer. Distilling Co., 570 F.2d at 855 fall within that category. The retention by Glen-Webb of Blair's oil drums, causing forfeiture of the deposit, can hardly be characterized as purposeful conduct in pursuit of monopolization. Indeed, Glen-Webb's "conversion" of the drums was the focus of Blair's state court suit, subsequently withdrawn in settlement. A distinction must be drawn between acceptable competitive behavior and predatory conduct from which an intent to monopolize may be inferred. Hallmark Industry v. Reynolds Metals Co., 489 F.2d at 12-13.
 
 
 29
 In view of the failure of Blair's proof, its contention that the district court misapplied the summary judgment standard applicable to an antitrust action must be rejected. While we are aware of the warning often quoted from Poller v. Columbia Broadcasting System, 368 U.S. at 473, 82 S.Ct. at 491,[5] it remains an established principle that summary judgment may under certain circumstances be appropriate in an antitrust case. For example, in First National Bank of Arizona v. Cities Services Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), the suggestion that Fed.R.Civ.P. 56(e)[6] "be read out of antitrust cases" in order to permit the plaintiffs to reach the jury was rejected.[7] The test applicable in this circuit to antitrust conspiracy cases is relevant in this context as well:
 
 
 30
 Once the allegations of conspiracy made in the complaint are rebutted by probative evidence supporting an alternative interpretation of a defendant's conduct, if plaintiff then fails to come forward with specific factual support of its allegations of conspiracy, summary judgment for the defendant becomes proper.
 
 
 31
 Mutual Fund Investors v. Putnam Management Co., 553 F.2d 620, 624 (9th Cir. 1977); ALW, Inc. v. United Air Lines, Inc., 510 F.2d at 55. In this case, the lower court correctly found that, with respect to its Section Two claim, Blair had failed to meet its burden of proof.
 
 III
 
 32
 Blair contends also that the district court improperly granted appellees' motion for summary judgment as to its conspiracy claim against Glen-Webb, Ranchers, and Burns. Section One of the Sherman Act provides, in part, as follows:
 
 
 33
 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal . . .
 
 
 34
 Because a conspiracy is rarely susceptible of direct proof, Blair may properly rely upon circumstantial evidence from which a violation may be inferred. Treasure Valley Potato Bargaining Ass'n v. Ore-Ida Foods, Inc.,497 F.2d 203, 208 (9th Cir.), Cert. denied, 419 U.S. 999, 95 S.Ct. 314, 42 L.Ed.2d 273 (1974); United States v. Champion Intern. Corp., 557 F.2d 1270, 1273 (9th Cir.), Cert. denied, 434 U.S. 938, 98 S.Ct. 428, 54 L.Ed.2d 298 (1977). In support of its claim, Blair cites (1) Ranchers' $2,000,000 in sales to Glen-Webb, (2) Ranchers' termination of Blair's credit, (3) the superiority of Blair's payment record as compared to Glen-Webb, (4) Ranchers' unwillingness to accept a third party's guarantee of Blair's credit, (5) Burns' statement that Ranchers would sell Blair's outstanding contracts for cotton seed oil to Glen-Webb, and (6) Burns' friendship with Clary.
 
 
 35
 Appellees contend, and the district court found, that these circumstances provide no basis upon which to conclude that they had conspired against Blair. On the contrary, Ranchers and Burns assert that their decision to deny credit to Blair was unilaterally determined and amply justified by legitimate business considerations, citing Blair's poor payment record, its repeated proffer of bad checks, its failure to return phone calls from Ranchers, and its refusal to meet with Burns to discuss Blair's balance due. In support of this position, Glen-Webb argues that Ranchers' continued extension of credit to it was a proper exercise of business judgment in that Glen-Webb had no similar history of questionable business practices. We agree.
 
 
 36
 Summary judgment may properly be granted in an antitrust action on an allegation of conspiracy where there are understandable and legitimate business reasons for a defendant's conduct. First National Bank of Arizona v. Cities Services Co., 391 U.S. at 277, 88 S.Ct. at 1587; See also Hallmark Industry v. Reynolds Metals Co., 489 F.2d at 13-14. We believe that appellees have supplied an entirely plausible and justifiable explanation of their conduct, one consistent with proper business practices. Absent any evidence of an agreement with Glen-Webb, Ranchers' refusal to deal with Blair does not constitute an antitrust law violation. Dahl, Inc. v. Roy Cooper Co.,448 F.2d 17, 19 (9th Cir. 1971).
 
 
 37
 Blair's failure to come forward with "specific factual support" for its conspiracy claim, after appellees offered a valid justification for their conduct, required that their motion for summary judgment be granted. Mutual Fund Investors v. Putnam Management Co., 553 F.2d at 624; ALW, Inc. v. United Air Lines, Inc., 510 F.2d at 55. In sum, it is hard to escape the conclusion that Blair, having suffered injury resulting from normal business hazards, attempts to seek recovery without sufficient factual basis by casting its complaint in antitrust terms.
 
 
 38
 Accordingly, the decision of the district court is in all respects AFFIRMED.
 
 
 
 *
 The Honorable John R. Bartels, United States District Judge for the Eastern District of New York, sitting by designation
 
 
 [1]
 One such example is the following from the deposition of Clary, at 253:
 Q. There was no doubt in your mind that Blair was a part of the business scene?
 A. He (sic) was making himself a part of it at that time.
 Q. Did you have any objection to that?
 A. I would like to see all of my competitors bow out of business.
 Q. You would?
 A. Yes.
 Q. You would like the entire northern California area for yourself?
 A. The whole world, yes. Wouldn't that be nice?
 Q. Have you always felt that way?
 MR. PARKINSON: Let the record show the witness is laughing at this. Counsel is taking it up as a serious matter.
 THE WITNESS: You ask a silly question, you get a silly answer.
 
 
 [2]
 The deposition testimony of a former Glen-Webb employee's wife, Nellie Duncan, is quoted repeatedly in Blair's opening brief. She recounts conversations which her husband, since deceased, had with Clary and with Scheetz and which he subsequently related to her. Admitting the hearsay character of the veiled threats by Clary and warnings by Duncan to Scheetz contained therein, Blair withdrew this testimony from consideration by the lower court
 
 
 [3]
 In Poller v. Columbia Broadcasting System, 368 U.S. 464, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962), the Court stated:
 Summary judgment should be entered only when the pleadings, depositions, affidavits, and admissions filed in the case "show that . . . there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.Rules Civ.Proc., 28 U.S.C.A. This rule authorizes summary judgment "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is, * * * (and where) no genuine issue remains for trial * * * (for) the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Sartor v. Arkansas National Gas Corp., 321 U.S. 620, 627, 64 S.Ct. 724, 728, 88 L.Ed. 967 (1944).
 368 U.S. at 467, 82 S.Ct. at 488.
 We look at the record on summary judgment in the light most favorable to Poller, the party opposing the motion, and conclude here that it should not have been granted. We believe that summary procedures should be used sparingly in complex antitrust litigation where motive and intent play leading roles, the proof is largely in the hands of the alleged conspirators, and hostile witnesses thicken the plot. It is only when the witnesses are present and subject to cross-examination that their credibility and the weight to be given their testimony can be appraised. Trial by affidavit is no substitute for trial by jury which so long has been the hallmark of "even handed justice."
 Id. at 473, 82 S.Ct. at 491.
 
 
 [4]
 We note that, according to Glen-Webb, its share of the market was less than six percent. Although the lower court did not explicitly refer to this amount in its decision, it did state that Glen-Webb and Blair "competed with some one hundred food service wholesalers all of whom were in the business of supplying restaurants and institutions."
 
 
 [5]
 See note 3 Supra
 
 
 [6]
 Rule 56(e) of the Fed.R.Civ.P. provides in part as follows:
 (e) * * * When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.
 
 
 [7]
 In First National Bank of Arizona v. Cities Services Co., 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968), the Court stated:
 What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him. . . . (P)etitioner's position is, in effect, that he is entitled to rest on the allegations of conspiracy contained in his pleadings. * * *
 To the extent that petitioner's burden-of-proof argument can be interpreted to suggest that Rule 56(e) should, in effect, be read out of antitrust cases and permit plaintiffs to get to a jury on the basis of the allegations in their complaints, coupled with a hope that something can be developed at trial in the way of evidence to support those allegations, we decline to accept it. While we recognize the importance of preserving litigants' rights to a trial on their claims, we are not prepared to extend those rights to the point of requiring that anyone who files an antitrust complaint setting forth a valid cause of action be entitled to a full-dress trial notwithstanding the absence of any significant probative evidence tending to support the complaint.
 391 U.S. at 289-90, 88 S.Ct. at 1592-93.