**Albert SOUZA and Seiyei Matsuda, etc., Plaintiffs,**

**and**

**Valentine Merseberg and Ruth Chun, on behalf of themselves and all others similarly situated, Plaintiffs-Appellants,**

**v.**

**ESTATE OF Bernice Pauahi BISHOP and its Trustees Frank E. Midkiff, Richard Lyman, Jr., Hung Wo Ching, et al., Defendants-Appellees.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 25, 1986.

Decided Sept. 16, 1986.

Withdrawn July 9, 1987.

Decided July 9, 1987.

Goldstein & Phillips and Alvin H. Goldstein, Jr., and Charles Wisch, San Francisco, Cal., Kemper & Watts and Thomas T. Watts, Honolulu, Hawaii, for plaintiffs-appellants.

G. Richard Morry, David J. Reber, Martin Anderson, Honolulu, Hawaii, and Richard E. Sherwood, Los Angeles, Cal., for defendants-appellees.

Before FERGUSON, CANBY and HALL, Circuit Judges.

### ORDER

This court's previous opinion in this case, reported at 799 F.2d 1327, is withdrawn, and the attached opinion is filed as the opinion of the court in this case.

## OPINION

CANBY, Circuit Judge:

Plaintiffs separately own two single family residences located on leased property owned by the Bishop Estate in Hawaii. In what appears to be a novel theory under the antitrust laws,[1] plaintiffs have alleged: that the Bishop Estate has unlawfully monopolized the market for leaseholds by imposing a lease-only system on consumers of single family residences; that the Bishop Estate, the Castle defendants, and other major landowners in Hawaii have illegally conspired to restrain trade in the single family residential leasehold market in Honolulu's "urban corridor"; and that the Bishop Estate has unlawfully tied the sale of its leaseholds to sales of single family residences.

Plaintiffs appeal from the grant of summary judgment in favor of the defendants and from the denial of their motion for reconsideration of class certification. *Souza v. Estate of Bishop*, 594 F.Supp. 1480 (D.Hawaii 1984). We affirm the well-reasoned decision of the district court.

## FACTS:

The Bishop Estate, the largest landowner in Hawaii, holds its property as a charitable educational trust for the children of Hawaii. The landholdings of the Castle defendants are also owned by trusts and by a tax-exempt Foundation, operated for religious, charitable, scientific and educational purposes.[2]

After World War II, the Bishop Estate sold some of its lands to developers. However, in the late 1950's the trustees became concerned about the potential loss of the Bishop Estate's charitable tax exemption due to direct development activities. The trustees also concluded that the Bishop Estate lacked the personnel and capital to develop residential lands. Consequently, the Bishop Estate turned to independent developers to whom it leased lands for subdivision and development. The developers, directly or through subdevelopers, planned, subdivided and improved the land and constructed and marketed single-family houses and leasehold lots. The Bishop Estate's financial participation in the developments was limited to receipt of a portion of the annual lease rents, although the Bishop Estate retained certain rights of approval over the development plan and a reversionary interest in the land and structures. The Bishop Estate did not receive any part of the proceeds from the sales of the residences constructed on the leasehold lots.

The plaintiffs purchased single family homes and leasehold lots in a subdivision developed under a lease agreement between the Bishop Estate and American Factors, Ltd.

## DISCUSSION:

### I. Antitrust Claims.

We review the grant or denial of summary judgment de novo, viewing the evidence in the light most favorable to the nonmoving party to decide whether there are no genuine issues of material fact and the moving party is entitled to summary judgment as a matter of law. *See, e.g., Rickards v. Canine Eye Registration Foundation, Inc.*, 783 F.2d 1329, 1332 (9th Cir. 1986); *Blair Foods, Inc. v. Ranchers Cotton Oil*, 610 F.2d 665, 668 (9th Cir.1980). The party opposing summary judgment has the burden of presenting specific probative evidence as to any fact claimed to be disputed. *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir.1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980). We find that plaintiffs have failed to carry their evidentiary burden to forestall summary judgment.

#### A. Conspiracy

Section one of the Sherman Act, 15 U.S.C. § 1, provides that every "conspir-

---

**1.** We assume for purposes of this opinion that the relevant sections of the antitrust laws apply to the situation before us. We question, however, whether Congress intended the antitrust laws to apply to the means by which a landowner conveys all or a portion of his bundle of rights in real property. *See Souza v. Estate of*

*Bishop*, 594 F.Supp. 1480, 1482 & n. 2 (D.Hawaii 1984).

**2.** The only allegation in plaintiffs' complaint that applies to the Castle defendants is an allegation of Sherman Act § 1 conspiracy.

acy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

■ Plaintiffs have not offered any evidence of " 'a conscious commitment to a common scheme designed to achieve an unlawful objective.' " *Wilson v. Chronicle Broadcasting Co.*, 794 F.2d 1359, 1365 (9th Cir.1986) (quoting *Edward J. Sweeney & Sons, Inc., v. Texaco, Inc.*, 637 F.2d 105, 111 (3d Cir.1980), *cert. denied*, 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981)). However, conspiracy cannot usually be established by direct proof. *Blair Foods, Inc.*, 610 F.2d at 671. Therefore, an antitrust plaintiff may rely upon circumstantial evidence from which a violation may be inferred. The evidence must tend "to exclude the possibility that the [defendants] were acting independently." *Wilson*, 794 F.2d at 1365.

Plaintiffs here cite activities of the major landowners over several decades to support their allegation that the landowners conspired to restrain trade by leasing rather than selling their lands. Plaintiffs point to family and social relationships among the landowners. They also cite four meetings (May 1946, May 1954, September 1955, August 1967) attended by various landowners. Further, plaintiffs allege that the standardization of the land lease form and the existence of parallel leasing practices among the landowners support an inference of conspiracy.

■ The mere existence of parallel conduct or social contacts of the nature alleged here is insufficient to establish a conspiracy. *Wilson*, 794 F.2d at 1365, 1366. In addition, defendants have offered understandable and legitimate business reasons for their conduct. *See Blair Foods, Inc.*, 610 F.2d at 671–72. *See also O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1469 (9th Cir.1986). Defendants presented evidence to the effect that the decision to lease rather than to sell lands was economically motivated due to the unfavorable tax consequences that would be incurred if the charitable trust lands were sold. They point out that standardization of the lease occurred at the instigation of the FHA and VA, and that, prior to the standardization, lease terms varied among the landowners. In addition, there is evidence that land rents vary among the landowners. The Bishop Estate is also required by the terms of the trust not to sell the trust properties. Finally, the more recent of the landowners' meetings were for the purpose of influencing legislation. Thus, the defendants have presented evidence that their conduct was independently based on legitimate business reasons, and the district court did not err in granting summary judgment in their favor on the conspiracy claim.

### B. Restraint of Trade

■ Although the plaintiffs seem to allege that the long-term leases utilized by the Bishop Estate constitute contracts in restraint of trade, plaintiffs have not presented evidence on this issue, apart from the tying arrangement, to establish that "the long-term lease, in and of itself, created a barrier to the leasehold market." Because plaintiffs failed to present evidence establishing the existence of a genuine issue of material fact or even the nature of this claim, the district court properly granted summary judgment in favor of defendants.

### C. Tying

Plaintiffs' tying claim alleges that the tying product is the single-family residence and that the tied product is the leasehold. Thus, plaintiffs' claim is distinguishable from the tying violation found by the Supreme Court in *Northern Pacific Railway Co. v. United States*, 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958) (tying of transportation services to lease or purchase of land).

■ Plaintiffs argue that the residence and the leasehold are separate products and are therefore subject to tying. Plaintiffs' argument defies reason; the product being marketed here was a house plus leased land not a house purchasable separately from the land on which it stands. *Cf. United States Steel Corp. v. Fortner*

*Enterprises, Inc.,* 429 U.S. 610, 97 S.Ct. 861, 51 L.Ed.2d 80 (1977) (no antitrust violation where seller of prefabricated structures tied financing with favorable terms for purchase of land to purchase of structures). *See also Jefferson Parish Hospital Dist. No. 2 v. Hyde,* 466 U.S. 2, 104 S.Ct. 1551, 80 L.Ed.2d 2 (1984).

The plaintiffs presented no evidence from which a reasonable juror could find that the house and the leased land constituted separate products, and the district court therefore properly found that the house and land constituted a package or single product.

### D. Monopolization

Plaintiffs allege that the Bishop Estate monopolizes the market for single-family residential leaseholds in suburban Honolulu. Plaintiffs do not contend that the Bishop Estate's mere ownership of land constitutes unlawful monopolization. Instead, they complain that the Estate's decision to lease rather than sell its land amounts to unlawful acquisition and maintenance of monopoly power. We disagree.

There are three elements to a claim of monopolization under Section 2 of the Sherman Act. A plaintiff must prove that (1) the defendant possesses monopoly power in the relevant market; (2) the defendant has willfully acquired or maintained its monopoly power; and (3) the plaintiff sustained antitrust injury. *Supermarket of Homes, Inc. v. San Fernando Valley Board of Realtors,* 786 F.2d 1400, 1404–05 (9th Cir. 1986). We have stated that the test for determining whether a defendant willfully acquired or maintained monopoly power is "whether the defendant's acts, otherwise lawful, were *unreasonably* restrictive of competition." *California Computer Prod-*

*ucts, Inc. v. International Business Machines Corp.,* 613 F.2d 727, 735–36 (9th Cir.1979) (emphasis in original).

■ In the present case, even if we assume, *arguendo,* that Section 2 applies to monopolies in land, we cannot agree that the Bishop Estate is guilty of monopolization. First, it is clear that the Bishop Estate's monopoly power was lawfully acquired as a consequence of historic accident.[3] Second, plaintiffs have not offered any evidence that the Estate has maintained its power by conduct that is *"unreasonably* restrictive of competition." *California Computer Products,* 613 F.2d at 735–36. "[A]ny firm, even a monopolist, may generally bring its products to market whenever and however it chooses." *Berkey Photo, Inc. v. Eastman Kodak Co.,* 603 F.2d 263, 286 (2d Cir.1979), *cert. denied,* 444 U.S. 1093, 100 S.Ct. 1061, 62 L.Ed.2d 783 (1980). The leasing of land to secure a present economic benefit and to retain long-term ownership is a normal incident of land ownership and a common business practice. In the absence of any evidence that the Bishop Estate's decision to lease rather than sell its land unfairly excluded competitors or helped the Estate gain a monopoly in another market, we conclude that the lease-only policy is not unreasonably restrictive of competition. *See Foremost Pro Color,* 703 F.2d 534, 545–46 (9th Cir.1983), *cert. denied,* 465 U.S. 1038, 104 S.Ct. 1315, 79 L.Ed.2d 712 (1984).[4]

*United States v. United Shoe Machinery Corp.,* 110 F.Supp. 295 (D.Mass.1953), *aff'd per curiam,* 347 U.S. 521, 74 S.Ct. 699, 98 L.Ed. 910 (1954), is not to the contrary. In *United Shoe,* the court held that a manufacturer of shoemaking machinery violated Section 2 by adopting a

---

**3.** The Estate's extensive land holdings can be traced to the "Great Mahele" of 1848, the division and distribution of lands owned by King Kamehameha III.

**4.** In *Foremost Pro Color,* we said that "[i]n order to state a claim for relief under section 2, product introduction must be alleged to involve some associated conduct which constitutes an anticompetitive abuse or leverage of monopoly power, or a predatory or exclusionary means of attempting to monopolize the relevant market,

rather than aggressive competition on the merits." 703 F.2d at 545–46. In the present case, plaintiffs offer no evidence that the Bishop Estate's lease-only policy is anything other than "aggressive competition on the merits." *See also* 2 P. Areeda & D. Turner, *Antitrust Law* ¶ 614 (1978) ("We emphasize that criminal sanctions or damages cannot properly be imposed on a monopolist who has not engaged in reprehensible behavior").

policy of leasing rather than selling its machines. The court emphasized that the leases had "many 'partnership' features." 110 F.Supp. at 344. The court stated that

These leases assure closer and more frequent contacts between United and its customers than would exist if United were a seller and its customers were buyers. Beyond this general quality, these leases are so drawn and so applied as to strengthen United's power to exclude competitors.

110 F.Supp. at 343.

In the present case, the Bishop Estate's lease-only policy creates no continuing relationship between lessor and lessee save for the periodic payment of rent. Moreover, there is no evidence that the Bishop Estate's leases contain any terms that inhibit lessees from purchasing or leasing land owned by other landholders. The Bishop Estate's decision to lease rather than sell its land is simply not the kind of conduct that the authors of the Sherman Act sought to prevent.

AFFIRMED.